Matthew R. Lewis (7919)
Jascha K. Clark (16019)
Brittany J. Merrill (16104)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Ste. 1400
P.O. Box 45385
Salt Lake City, Utah  84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
E-mail: mlewis@rqn.com
E-mail: jclark@rqn.com
E-mail: bmerrill@rqn.com

*Attorneys for Receiver, Maria E. Windham*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARIA E. WINDHAM, as Receiver for MARQUIS PROPERTIES, LLC,<br><br>        Plaintiff,<br><br>    vs.<br><br>GREGORY EATON RINGER, an individual; CHRISTA HOLMSTEAD RINGER, an individual; and FRANKLIN ESCROW & ACCOMMODATIONS, LLC, an expired Utah limited liability company,<br><br>        Defendants. | **COMPLAINT**<br>**(Ancillary Suit)**<br><br><br>Case No. 2:18-cv-00060-BCW<br><br>Magistrate Judge Brooke C. Wells |

Maria E. Windham (the "Receiver"), as Receiver for Marquis Properties, LLC and the

assets of the Marquis Properties Receivership Estate, complains against Gregory Eaton Ringer

("Greg Ringer"), Christa Holmstead Ringer ("Christa Ringer"), and Franklin Escrow &

Accommodations, LLC ("Franklin Escrow") (each a "Defendant" and collectively, "Defendants") as follows:

## INTRODUCTION

This lawsuit is related to a real estate Ponzi scheme (the "Marquis Ponzi Scheme") perpetrated by Chad Deucher ("Deucher") through Marquis Properties, LLC ("Marquis Properties"). Deucher pleaded guilty in his criminal case to securities fraud and admitted to operating Marquis Properties as a Ponzi scheme from 2010 to 2016. Deucher is currently serving a sentence of 84 months in prison. *See United States v. Chad Roger Deucher*, United States District Court for the District of Utah, Case No. 2:16-CR-189-DN.

This is one of several "clawback" lawsuits concerning the Marquis Ponzi Scheme filed by the Receiver appointed by the Court in the parallel civil case filed by the Securities and Exchange Commission ("SEC") concerning the Marquis Ponzi Scheme. In this lawsuit, the Receiver seeks to "claw back" into the Marquis Properties Receivership Estate investor assets that Deucher directed Greg Ringer to withdraw from investor funds paid into the Marquis Properties Ponzi Scheme. These payments served as payment for appearing to act as an 'escrow agent' through which investor funds would be transferred from various investors to Marquis Properties. In fact, Greg Ringer was not acting as an escrow agent, and he was not licensed to do so. The only function Greg Ringer performed was to take possession of investor funds on behalf of Marquis Properties in the bank account of Defendant Franklin Escrow, an entity created and controlled by Greg Ringer for this purpose, take a 'cut' of the money, and transfer the remaining investor funds to Marquis Properties. Defendant Greg Ringer transferred the money that he took

from victim investors' investments in Marquis to accounts belonging to him and to Defendant Christa Ringer.

Defendants must turn over to the Receiver all funds Defendants obtained from Marquis Properties investors because Defendants acted wrongfully in obtaining these funds, for which Defendants provided no value, and Defendants were unjustly enriched at the expense of the victim investors by obtaining these investor funds.  Defendants are rightfully deemed to hold these funds in constructive trust for the Receivership Estate.

Additionally, Defendants must return all payments and other assets transferred directly or indirectly from Marquis Properties to any of the Defendants because Deucher, acting with fraudulent intent in furtherance of the Marquis Ponzi Scheme while Marquis Properties was insolvent, directed Marquis Properties to transfer the investor assets to Defendants with actual intent to hinder, delay, or defraud investors.  Marquis Properties did not receive reasonably equivalent value for these transfers, and the Defendants did not take the payments from investor assets in good faith and without reason to know the payments were fraudulent transfers.

Together, the value of the investor assets the Defendants must return to the Receiver is known to amount to more than $121,320.00.  The Receiver seeks an accounting from Defendants and disgorgement of all payments and assets held in constructive trust for the Receivership estate.

## PARTIES

1.      Maria E. Windham is the court-appointed Receiver for Marquis Properties and the Marquis Properties Receivership Estate.

2.      Defendant Gregory Eaton Ringer is an individual who, upon information and

3

belief, resides in Utah County, Utah.

3.  Defendant Christa Holmstead Ringer is an individual who, upon information and belief, resides in Utah County, Utah.

4.  Defendant Franklin Escrow & Accommodations, LLC is an expired Utah limited liability company whose principal place of business, upon information and belief, was located in Utah County, Utah.

## JURISDICTION AND VENUE

5.  The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 754, and principles of ancillary or supplemental jurisdiction under 28 U.S.C. § 1367.  This Complaint is brought to accomplish the objectives of the Amended Order Appointing Receiver, and thus this matter is ancillary to the Court's exclusive jurisdiction over the receivership estate.

6.  The Court has personal jurisdiction over Defendants pursuant to 28 U.S.C. §§ 754 and 1692.

7.  Venue is proper in this Court pursuant to 28 U.S.C. § 754 as this action is related to the SEC's parallel civil case pending in this District and the Receiver was appointed in this District.

## GENERAL ALLEGATIONS

### Marquis Ponzi Scheme

8.  Marquis Properties was operated by its principal Deucher as a Ponzi scheme at all times relevant to the matters asserted in this action.

9.  On information and belief, Deucher raised the money used to perpetuate the Ponzi

scheme from over 250 investors in Marquis Properties.

10.     Deucher represented to investors that Marquis Properties offered investments in turnkey real estate properties, promissory notes secured by real properties, and joint venture agreements to purchase real properties.  In that regard, Deucher represented that Marquis Properties located, purchased, renovated and sold single family and small multi-family homes in lucrative areas of the country.  Deucher told investors that Marquis Properties has proven renovation crews, property managers and realtors on the ground to assist with all stages of the project, eliminating the need for direct involvement of the investors.

11.     Deucher represented to investors that they would receive guaranteed return of principal and returns on their investment in the form of rental income, interest payments, and/or profits from the sale of properties.  He promised that Marquis Properties would pay return of "rents" on their investments even when no renters occupied the real properties.

12.     The investments offered by Marquis Properties constitute securities.

13.     Deucher represented that investments with Marquis Properties were safe, low-risk, or risk-free because investment proceeds would be secured by a first deed of trust on property wholly owned by Marquis, and that investments would be "over-collateralized."

14.     Deucher omitted to disclose to investors, however, that (a) the properties Marquis Properties offered as collateral were not owned by Marquis Properties, were substantially encumbered, and/or were in uninhabitable or blighted condition; (b) that Marquis Properties itself was insolvent and unable to make investor interest and principal payments according to terms of agreements; and (c) that investor returns were being paid from the funds of new investors.

15.     In April 2017, Deucher pleaded guilty in a related criminal case, Case No. 2:16-CR-189-DN, to operating Marquis Properties as a Ponzi scheme between March 2010 and February 2016.  Moreover, in his statement in advance of his guilty plea, Deucher admitted that he had engaged in securities fraud in relation to the sale of real-estate based securities.  *See* Case No. 2:16-CR-189-DN, Dkt. No. 50 at ¶¶ 11(a)-(e).

16.     On October 11, 2017, Deucher was sentenced to 84 months in federal prison and, upon his release, 36 months of supervised release.  Deucher was also ordered to pay $16,560,552.00 in restitution.

**The SEC Action**

17.     On January 19, 2016, in Case No. 2:16-cv-00040-JNP, the Securities and Exchange Commission ("SEC") filed suit (the "SEC Action") against Deucher, Richard Clatfelter and Marquis Properties.  Deucher's wife, Jessica Deucher, was named as a relief defendant.

18.     On January 20, 2016, this Court entered the Order Freezing Assets and Protecting Documents (Dkt. No. 10) (the "Freeze Order").

19.     The Freeze Order specifically ordered that:

Except as otherwise specified herein, all of Defendants' Assets are frozen. All persons and entities with direct or indirect control over any of Defendants' Assets, who receive actual notice of this order, are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, encumbering, concealing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such assets. This freeze shall include, but is not limited to, Defendants' Assets that are on deposit with financial institutions such as banks, brokerage firms and mutual funds. Such institutions are directed to hold or retain within their control and prohibit the withdrawal, removal, transfer, or other disposal of any such assets, funds, or other properties.

*See id.* at 2-3.

20.     On January 18, 2017, the Court entered the Order Appointing Receiver, pursuant to which Maria E. Windham was appointed Receiver.  (*See* Dkt. No. 110.)

21.     On October 24, 2017, the Court amended the terms of the Order Appointing Receiver and issued an Amended Order Appointing Receiver.[1]  (Dkt. No. 182.)

22.     The Court found appointment of the Receiver to be "necessary and appropriate for the purposes of marshaling and preserving Defendants' Marquis Properties (the 'Entity Receivership Defendant') and Deucher's (the 'Individual Receivership Defendant') (collectively the Receivership Defendants') assets that were frozen by the [Freeze Order]."   (Dkt. No. 182).

23.     The Court defined the "Receivership Estate" as the assets of Marquis Properties and Deucher that were frozen by the Court's Order Freezing Assets on January 20, 2016 ("Frozen Assets"), as well as the assets of any other entities or individuals that: (a) are attributable to funds derived from investors or clients of the Defendants; (b) are held in constructive trust for the Defendants; and/or (c) were fraudulently transferred by the Defendants (the "Recoverable Assets").[2]  (*Id.* at 1-2.)

24.     Further, the Court found that based on the record in the proceedings before it, the Frozen Assets and Recoverable Assets include, but are not limited to all assets of the following entities owned or operated by the Individual Receivership Defendant: Marquis Air, LLC; Marquis Companies, LLC; Marquis Enterprises, LLC; Marquis, LLC; Marquis Direct; Invo; and Invo Direct (collectively with Marquis Properties, the "Marquis Entities").  (*Id.* at 2.)

---

[1] On January 12, 2018, the Court entered a further Order Reappointing Maria E. Windham Receiver that reappointed Ms. Windham on the same terms. (Dkt. No. 205). This procedure is utilized to reset the 10 day clock to file notices pursuant to 28 U.S.C. § 754.

[2] Except, the Court excluded the residence titled in the name of Relief Defendant, Jessica Deucher located at 1136 North 650 East, Orem Utah from the Receivership Estate. (Dkt. No. 182).

25.     Moreover, the Court ordered that for any of the Receivership Defendants' property or interest in property, of any kind whatsoever, whether real or personal, whether direct or indirect, to be excluded from the Receivership Estate, the Receivership Defendants were required to file an accounting with the Court, including books and records sufficient to identify a source of the assets that is unconnected with investor funds, frozen assets, or other fraudulent activities, within 20 days of the entry of Amended Order Appointing Receiver.  (*Id.* at ¶ 4.)

26.     Pursuant to the terms of the Amended Order Appointing Receiver, the Receiver is charged with, among other things, investigating the activities of the Receivership Defendants, gathering and recovering assets of the Receivership Defendants, including pursuing claims to recover those assets, as necessary.  Specifically, Paragraph 6 of the Amended Order Appointing Receiver vests the Receiver with, among other authority, "all powers and authority of a receiver at equity." (*See id.*at ¶ 6.)  The Receiver is directed to "pursue and preserve all of the Marquis Entities' claims" (*id.* at 7.), and she has authority to "bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging her duties as Receiver." (*Id.* at ¶ 9(I); s*ee also id.* ¶36.)

**Fraudulent Transfers of Investor Assets to Defendants**

27.     While Deucher operated Marquis Properties as a Ponzi scheme, and while Marquis Properties was insolvent, Deucher directed Greg Ringer to transfer investor funds to Defendants' personal bank accounts as purported fees for transferring investor payments from investors to Marquis Properties.

28.     Deucher wrongfully caused Greg Ringer to make these payments of investor assets in furtherance of his fraud.

29.     Between 2008 and 2010, Greg Ringer formed Franklin Escrow.

30.     Franklin Escrow had a bank account with Chase Bank, with an account number ending in 2688 (hereinafter the "Escrow Account").

31.     In or about the fall 2011, Deucher entered into an agreement with Greg Ringer to use the Escrow Account to transfer investor monies.

32.     Under the agreement, Marquis Properties investors, who believed that they were depositing money for the purchase of property, were directed to transfer money into the Escrow Account.  Deucher would then instruct Greg Ringer to transfer the investor assets from the Escrow Account into other accounts, including the accounts of Marquis Properties, Deucher, and others.

33.     In exchange for Greg Ringer transferring these investor assets, Deucher also directed Greg Ringer to debit the Escrow Account to collect a fee for the services that Greg Ringer provided.

34.     Investors deposited money into the Escrow Account between 2011 and 2014.

35.     Greg Ringer caused the majority of the investor assets deposited by investors into the Escrow Account since 2011 to be wire transferred to accounts in the name of Marquis Properties or elsewhere, as directed by Deucher.

36.     Greg Ringer also transferred investor funds, allegedly for his fees, from the Escrow Account into his own personal bank account and the personal bank account of his wife, Christa Ringer.

37.     Greg Ringer transferred the Marquis Properties investor funds for his fees based on authorization from Deucher without performing any service or providing benefit to Marquis

Properties or its investors.

38.     From 2011 to 2014, Defendants took approximately $121,320.00 in fees that were authorized by Deucher.

39.     All fees received by Defendants were paid out of the funds originally invested by investors, and not out of any profits or earnings generated by the investors' alleged investments.

40.     Defendants knew or should have known that the fees constituted investor funds and not earnings or profits from investments of the investor funds.

41.     Greg Ringer and Franklin Escrow facilitated the Ponzi scheme.  Without the active involvement of Greg Ringer and Franklin Escrow in setting up the Escrow Account and transferring investor funds from the investors to Marquis Properties, others, and Defendants, the Ponzi scheme would not have caused the amount of investor loss that it did.

42.     The cumulative amount of investor assets paid to Defendants as fees exceeds $121,320.00.

43.     Each and every one of the payments to Defendants reduced the assets of Marquis Properties available to repay investors.

44.     Defendants did not provide Marquis Properties with reasonably equivalent value for each of the payments they received.  Moreover, Defendants knew or should have known that the payments from Marquis Properties were improper, and therefore did not receive these payments in good faith.

45.     The money used to pay the fees to the Defendants constitutes ill-gotten gains from the fraudulent sales of securities to unsuspecting investors.  Defendants have no legitimate claim to the fees, as the fees were paid to Defendants specifically for Greg Ringer and Franklin

Escrow's role in helping to facilitate and perpetuate the illegal sales of the securities as described herein.

### Specific Payments Made to Each Defendant

46.     Between March 2011 and December 2014, in furtherance of the Marquis Ponzi Scheme, Deucher directed Greg Ringer and Franklin Escrow to transfer investor payments from the Escrow Account to Defendant's personal bank accounts, including without limitation the following payments:

47.     On June 3, 2011, Greg Ringer transferred $2,000.00 in investor funds from the Escrow Account, which had an account number ending in 2688, to Gregory Eaton Ringer.

48.     On December 3, 2014, Greg Ringer transferred $1,000.00 in investor funds from the Escrow Account, which had an account number ending in 2688, to Gregory Eaton Ringer.

49.     On March 17, 2011, Greg Ringer transferred $1,350.00 in investor funds from the Escrow Account, which had an account number ending in 2688, to Christa Ringer.

50.     On November 24, 2014, Greg Ringer transferred $1,500.00 in investor funds from the Escrow Account, which had an account number ending in 2688, to Christa Ringer.

51.     Deucher caused Greg Ringer to transfer additional payments to Defendants, in excess of any value provided by Defendants to Marquis Properties.

52.     Altogether, Defendants were the recipients and/or beneficiaries of at least $121,320.00 in investor asset payments from Marquis Properties, which constitute fraudulent transfers. Deucher caused Marquis Properties to make these investor asset payments in exchange for Greg Ringer accepting payments from investors in the Escrow Account and transferring investor payments to Marquis Properties.

## FIRST CLAIM FOR RELIEF
### (Unjust Enrichment – All Defendants)

53.     The Receiver realleges and incorporates by this reference the foregoing paragraphs of the Complaint.

54.     A benefit was conferred upon each and every Defendant by transfer of assets belonging to Marquis Properties to the Defendants.

55.     Each and every Defendant knew of the benefit conferred upon him or her by receipt of assets from Marquis Properties.

56.     Each and every Defendant's retention of assets conferred by Marquis Property, which constitute investments of injured victims of the Marquis Ponzi Scheme, would be inequitable under the circumstances, without payment of the value of the assets to the Receiver for return to the injured persons.

57.     Defendants transferred investor funds at the direction of Deucher without performing any service or providing benefit to Marquis Properties or its investors.

58.     It would be unjust to allow Defendants to retain these illegally obtained investor asset funds.

## SECOND CLAIM FOR RELIEF
### (Constructive Trust – All Defendants)

59.     The Receiver realleges and incorporates by this reference the foregoing paragraphs of the Complaint.

60.     The commissions, fees, and other funds paid to each of the Defendants are proceeds that were unlawfully obtained from investors by means of artifice and fraud. Accordingly, those proceeds, including the fees and funds received by each of the Defendants,

are impressed with a constructive trust.

61.     A benefit was conferred upon each and every Defendant by transfer of assets belonging to Marquis Properties to the Defendant.

62.     The Defendants have been unjustly enriched.

63.     It would be unjust to allow Defendants to retain these illegally obtained investor asset funds.

64.     Each and every Defendant's retention of assets conferred by Marquis Property, which constitute investments of injured victims of the Marquis Ponzi Scheme, would be inequitable under the circumstances, without payment of the value of the assets to the Receiver for return to the injured persons.

65.     The Receiver is entitled to recover prejudgment interest from each Defendant from the date of the receipt of each payment or fee.

### THIRD CLAIM FOR RELIEF
**(Accounting – All Defendants)**

66.     The Receiver realleges and incorporates by this reference the foregoing paragraphs of this Complaint.

67.     As of the date of the filing of this Complaint, the Receiver has performed and continues to perform an investigation and analysis of the use of the proceeds of the fraudulent investment offerings, including the payment of fees to the Defendants.

68.     As part of her investigation and analysis, the Receiver endeavored to determine how much money was actually paid to each of the Defendants.  Based upon the information currently available to her, the Receiver has made an initial calculation of the amounts paid to each Defendant.

69.     The Receiver understands that the information available to her may be incomplete.

70.     The Receiver is entitled to an accounting from each of the Defendants, including the return of all monies received, directly or indirectly, from Marquis Properties.

**FOURTH CLAIM FOR RELIEF**
**(Fraudulent Transfer – Utah Uniform Fraudulent Transfer Act – All Defendants)**

71.     The Receiver realleges and incorporates by this reference the foregoing paragraphs of this Complaint.

72.     Each and every Defendant received transfers of assets from Marquis Properties.

73.     At all times relevant to the matters asserted herein, Deucher operated Marquis Properties as a Ponzi scheme.

74.     Because the transfers were made while Marquis Properties was operated as a Ponzi scheme, as a matter of law, these transfers were made by Greg Ringer at the direction of Marquis Properties with the intent to hinder, delay or defraud creditors and/or investors of Marquis Properties.

75.     Furthermore, the transfers were made at a time when Marquis Properties was insolvent.

76.     The payments were made from investor funds and reduced the amount of money available to return to investors.

77.     Defendants will be unable to establish that Marquis Properties received reasonably equivalent value for the transfers and that Defendants took the payments in good faith.

**WHEREFORE**, the Receiver prays as follows:

A.  That the Court avoid all fraudulent transfers, and each and every Defendant be ordered to return to the Receivership Estate the funds that she received from Marquis Properties, and that judgment be entered against each Defendant and in favor of the Receiver for the total amount transferred to each Defendant;

B.  In the case that the funds were spent to acquire any real or personal property, the Receiver requests that a constructive trust be imposed upon the property, and an order that it must immediately be turned over to the Receiver;

C.  For a constructive trust to be imposed on all assets the retention of which would unjustly enrich Defendants;

D.  For an accounting of funds belong to Marquis Properties investors collected by Defendants;

E.  For prejudgment interest, if appropriate; and

F.  For such other relief as the Court may allow.

DATED this 18th day of January, 2018.

RAY QUINNEY & NEBEKER P.C.

*/s/ Jascha K. Clark*
Matthew R. Lewis
Jascha K. Clark
Brittany J. Merrill

*Attorney for the Receiver, Maria E. Windham*

1440896

15